Robert V. Eye General Counsel Department of Health and Environment Landon State Office Building Topeka, Kansas 66612
Dear Mr. Eye:
As general counsel for the Kansas department of health and environment you ask our opinion regarding the applicability of some of the 1992 legislative amendments to the Kansas storage tank act, K.S.A. 65-34,100
et seq. Specifically, you ask:
 "1. Do the amendments to the Act have retroactive application as to those newly covered entities receiving reimbursement for costs they expended prior to July 1, 1992.
 "2. Do the amendments to the Act modify the reimbursement requirements set forth at K.S.A. [1991 Supp.] 65-34,118 and K.S.A. [1991 Supp.] 65-1119 so that newly covered entities may receive reimbursement for costs expended prior to July 1, 1992, without satisfying those requirements.
 "3. Pursuant to the amendments to the Act, what are the conditions under which the newly covered entities can access the underground fund."
In Attorney General Opinion No. 91-121 we set forth, in detail which will not be fully reiterated herein, an explanation of the Kansas storage tank act. Your questions pertain to reimbursement from the petroleum storage tank release trust fund the purpose of which we explained was:
 "[t]o assist owners and operators of underground petroleum storage tanks in providing the required evidence of financial responsibility for corrective action required by a release from any such tank. K.S.A. 1990 Supp. 65-34,114(a) and (b). Eligibility to participate in the petroleum storage tank release trust fund may be submitted as evidence of financial responsibility required of owners and operators of underground petroleum storage tanks. K.S.A. 1990 Supp. 65-34,115.
 "The classification system as set forth in K.S.A. 1990 Supp. 65-34,119 determines which owners and operators are eligible for reimbursement from the fund in the event corrective action is required and the amount of such reimbursement (up to a maximum of $1,000,000, K.S.A. 1990 Supp. 65-34,120). . . ." Attorney General Opinion No. 91-121, page 4.
One of the eligibility criteria prior to the 1992 amendments was:
 "[T]he owner or operator submits to the secretary proof, satisfactory to the secretary, that: . . . (B) such owner or operator is able to satisfy the criteria for self insurance under the federal act but is not engaged in production or refining of petroleum products;. . . ." K.S.A. 1991 Supp. 65-34,119(a)(16).
This eligibility section was amended as follows:
 "[W]ith regard to an underground petroleum storage tank, the owner or operator submits to the secretary proof, satisfactory to the secretary, that: . . . (B) such owner or operator is able to satisfy the criteria for self-insurance under the federal act but the release is from an underground petroleum storage tank not located at a facility engaged in production or refining of petroleum;. . . ." K.S.A. 65-34,119(a)(16). See L. 1992, ch. 311, § 15(b)(11).
We readily acknowledge that the language used in the foregoing sections is convoluted. However, we understand that prior to the 1992 amendments, large (tangible net worth of at least $10 million) producers and refiners of petroleum products were excluded from any reimbursement from the fund by virtue of K.S.A. 1991 Supp. 65-34,119(a)(16). Now, since the 1992 amendments, such large producers and refiners are eligible for some reimbursement from the fund to the extent that corrective costs are for a release not occurring at a production or refining facility. For example, prior to the 1992 amendments a large oil company which produced, refined and subsequently sold gasoline at its own stations would not have been eligible for reimbursement for corrective action costs which were expended in response to a release at one of its service stations. Now if a large oil company expends corrective action costs for a release occurring at one of its service stations, it falls within the eligibility requirement for reimbursement of K.S.A. 65-119(a)(16) for some of those costs. We understand such entities to be the "newly covered entities" to which your questions refer.
We understand that prior to the passage of the 1992 amendments some of the newly covered entities in fact expended corrective action costs in relation to releases which occurred at facilities which were not engaged in production or refining of petroleum products. We further understand your questions pertain to whether or not these entities may now be eligible for reimbursement for those previously expended costs. In order to address your questions two additional amendments to the Kansas storage tank act must be considered:
 "An owner or operator shall be entitled, upon written notification to the secretary, to elect between the deductible provided by this section before July 1, 1992, and the deductible provided by this section on and after July 1, 1992, with respect to costs of corrective action taken on or after April 1, 1990, if such owner or operator or former owner or operator has applied before July 1, 1992, for reimbursement for such costs from the respective fund. If an owner or operator or former owner or operator has paid a deductible that is greater than the deductible provided by this section on and after July 1, 1992, such owner or operator or former owner or operator may apply to the secretary for a refund of the difference in such deductibles. If the owner or operator or former owner or operator has died or no longer exists, no such refund shall be paid." K.S.A. 65-34,119. See L. 1992, ch. 311, § 15(h).
and
 "An owner or operator shall be entitled to reimbursement from the underground fund for the costs of corrective action taken on or after April 1, 1990, in response to a release from an underground petroleum storage tank which was discovered on or after December 22, 1988, to the extent that such owner or operator would be entitled to reimbursement if the release had been discovered on or after April 1, 1990, including application of all applicable deductibles and conditions of reimbursement imposed by K.S.A. 1991 Supp. 65-34,119 and amendments thereto." K.S.A. 65-34,119a. See L. 1992, ch. 311, § 17. (Emphasis added).
Again, the legislative language does not make for easy reading. We believe the first quoted provision intends that if costs of corrective action were expended by an eligible entity after April 1, 1990 and the owner or operator applied for reimbursement from the fund prior to July 1, 1992, such eligible owner or operator could choose between two deductibles and thereby possibly become eligible for a reimbursement refund.
We believe the second quoted provision provides that if costs of corrective action were expended after April 1, 1990 by an eligible entity in relation to a release which was discovered after December 22, 1988, such eligible owner or operator would also be entitled to reimbursement to the extent that such owner or operator would be entitled to reimbursement if the release had been discovered on or after April 1, 1990.
The question is: who is to be considered an eligible owner or operator? Who meets the "conditions of reimbursement imposed by K.S.A. 1991 Supp. 65,119?" One of the conditions has been discussed above in relation to "new covered entities." But do those "newly covered entities" meet other conditions of reimbursement specified in K.S.A. 65,119, specifically:
 "The owner or operator must submit to and receive from the secretary approval of the proposed corrective action plan, together with projected costs of the correction action;" K.S.A. 65-34,119(a)(7). See L. 1992, ch. 311, § 15(b)(2).
and
 "no later than 30 days from the submission of the notice as required by subsection (b)(6), the owner or operator must submit an application for reimbursement of corrective action costs in accordance with the criteria established by the secretary, and the application for reimbursement must include the total amount of corrective action costs and the amount of reimbursement sought. In no case shall the total amount of reimbursement exceed the lesser of the actual costs of the corrective action or the amount of the lowest bid submitted pursuant to K.S.A. 1991 Supp. 65-34,118 and amendments thereto and approved by the secretary, less the appropriate deductible amount;. . . ." K.S.A. 65-34,119(a)(12). See L. 1992, ch. 311, § 15(b)(7).
Reducing the problem to understandable terms, it is this: Prior to the 1992 amendments, large producers and refiners expended costs for corrective action taken in a timely manner at facilities not engaged in production or refining. At that time, being statutorily excluded from reimbursement from the fund, such companies did not submit a proposed corrective action plan to the secretary for approval; nor did they obtain the requisite three bids pursuant to K.S.A. 1991 Supp. 65-34,118. Now, the amendments discussed above appear to make such entities eligible for reimbursement from the fund for those costs less the applicable deductible, but only if they formerly complied with conditions which were not applicable to them at the time the costs were actually expended. On the other hand, we understand that some large producers and refiners suffered releases at facilities not engaged in producing and refining, but did not expend any money to correct the situation in a timely manner. By delaying corrective action until after the 1992 amendments were passed, and then complying with the quoted conditions of reimbursement, those companies are lawfully rewarded for their dilatoriness in cleaning up the environment. Are those who spent money to take corrective action in a timely manner now to be punished for doing so by denying them access to reimbursement from the fund? Can the applicable statutes reasonably be read to obviate such denial as a necessary conclusion?
In resolving this dilemma, we are mindful of the Kansas Supreme Court's guidance regarding statutory construction found in West v. Collins,251 Kan. 657 (1992):
 "Interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature. It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained." Syl. 3.
 "In determining legislative intent, courts are not limited to consideration of the language used in the statute, but may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act." Syl. 4.
 "When a statute is susceptible to more than one construction, it must be construed to give expression to its intent and purpose, even though such construction is not within the strict literal interpretation of the statute." 251 Kan. at 666, citing Manzanares v. Bell, 214 Kan. 589, Syl. 15.
Regarding the condition that "the owner or operator must submit to and receive from the secretary approval of the proposed corrective plan, together with projected costs of the corrective plan," we note that the statute does not and did not specify a deadline for such plan submission and approval. K.S.A. 65-34,119(a)(7). We also note that for "newly covered entities," a reimbursement application deadline of July 1, 1992 is specified and applicable pursuant to the 1992 amendments, i.e. K.S.A.65-34,119, [see L. 1992, ch. 311, § 15(h)] and K.S.A. 65-34,119a, [see L. 1992, ch. 311, § 17]. Accordingly, it is our opinion that if a "newly covered entity" made application for reimbursement from the fund prior to July 1, 1992 and such application contained the proposed (albeit already implemented) corrective action plan, together with the projected (albeit already expended) costs of the corrective action plan, the secretary would be within his discretion in approving such plan (albeit after the fact).
Next, in relation to the bid requirement, K.S.A. 65-34,119(a) provides in pertinent part:
 "[U]pon approval of such plan, the owner or operator shall obtain and submit to the secretary at least three bids from persons qualified to perform the corrective action except that, the secretary may waive this requirement upon a showing that the owner or operator has made a good faith effort but has not been able to obtain three bids from qualified bidders." (Emphasis added).
As discussed, for some "newly covered entities" obtaining bids for corrective action not only was not required by the applicable law at the time, but would have been a pointless effort in futility. In such situations it is our opinion that the secretary would be within his discretion in determining that no effort was a "good faith effort" if any effort would have been an effort in futility. In other words, it is our opinion that the secretary has broad discretion in determining exactly what may be considered a "good faith effort" on the part of an owner or operator and may take into account all the attendant circumstances, both factual and legal.
This construction of the applicable statutes is, while possibly a bit of a stretch, consistent with what we believe to be the intent of the legislature. The general rule of statutory construction is that a statute will operate prospectively unless its language clearly indicates that the legislature intended that it operate retrospectively. Nicholsv. Williams, 225 Kan. 285 (1979). While the legislative history on the precise point of this opinion is sparce, there are some indications that our construction is consistent with legislative intent. First, both K.S.A. 65-34,119 and K.S.A. 65-119a provide specific historical dates after which reimbursement for expended corrective action costs may be had. Second, the following entry is found in the minutes of the house committee on energy and natural resources on March 5, 1992 regarding House Bill No. 3153 amending the Kansas storage tank act:
 "A motion was made by Representative Rezac, seconded by Representative Lloyd, to amend HB 3153 to clarify that the bill is retroactive, but that payments can only be made to the individual who paid the deductible in the first place.
 "A substitute motion was made by Representative McKechnie, seconded by Representative Lawrence, to amend HB 3153 to specify that the payee is the record owner on a date specific. The motion carried." (Emphasis added).
That motion and substitute motion were enacted as L. 1992, ch. 311, § 15(h).
In testimony presented on March 26, 1992 before the senate energy and natural resources committee regarding this provision, Representative John D. McClure stated:
 "The bill also allows owners or operators of tanks who have applied to the trust fund for reimbursement on or after April 1, 1990 up to the July 1, 1992 effective date of the act, to choose which deductible will apply."
Testimony presented by the Kansas department of health and environment (KDHE) was consistent with Representative McClure's testimony regarding the effect of the amendment:
 "New subsection (h) will allow those owners and operators who have conducted corrective action on or after April 1, 1990, to be reimbursed the difference between their deductible under current law and that proposed by House Bill 3153, provided they still own the property on July 1, 1992." Minutes, Senate Committee on Energy and Natural Resources, Attachment 7, March 26, 1992.
Third, the following testimony was given by KDHE to the senate committee on energy and natural resources on April 1, 1992 regarding House Bill No. 3153.
 "The House amendments to House Bill 3153 inadvertently removed the retroactive clause which allowed owners/operators to file a request for reimbursement with the Trust Fund for releases occurring between December 22, 1988, (the date of the enactment of the Federal law) and April 1, 1990, (the date of enactment of the Kansas Storage Tank Act). We have attached a technical amendment which addresses this oversight. The Department supports the passage of House Bill 3153 with the technical amendment." (Emphasis added).
That technical amendment was enacted as an amendment to K.S.A. 1991 Supp. 65-34,119a. L. 1992, ch. 311, § 17. In a memorandum to senate committee member Janis Lee dated March 25, 1992, an assistant revisor of statutes characterized section 17 as a provision which "clarifies that underground tank corrective action costs incurred after April 1, 1990 are likewise reimbursable even if the leak was discovered before that date."
In conclusion, based on available legislative history, in our opinion the intent of the legislature's 1992 amendments was to give limited retroactive effect to the eligibility provisions of the Kansas storage tank act as found at K.S.A. 65-34,119 and K.S.A. 65-34,119a. Given that premise, it follows that a broad interpretation of the secretary's discretion must be given regarding the conditions of eligibility as found in K.S.A. 65-34,119(a)(7) (secretary's approval of proposed corrective action plan) and K.S.A. 65-34,118 (secretary's authority to waive three bid requirement upon finding of good faith effort).
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Camille Nohe Assistant Attorney General